UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: | Section A |
| Keith J. Devilliers,<br>Angela S. Dominguez<br>          Debtors, | Case No. 06-10415<br>Chapter 13 |
| In re: | |
| Joy F. Piazza<br>          Debtor, | Case No.  06-10491<br>Chapter 13 |
| In re: | |
| Joseph F. Chauvin,<br>Cheryl D. Chauvin<br>          Debtors, | Case No.  06-10554<br>Chapter 13 |
| In re: | |
| John J. Fretwell<br>Patricia A. Fretwell<br>          Debtors, and | Case No.  06-10566<br>Chapter13 |
| In re: | |
| Antionette Guidry<br>          Debtor. | Case No.  06-10638<br>Chapter 13 |

**Reasons for Order Partially Sustaining Trustee's Objections to Plan Confirmation**

This matter came before the Court on the Objections to Confirmation filed by S.J. Beaulieu, Jr., the standing chapter 13 trustee, who avers that the debtors claim excessive deductions or expenses and that the plans do not contribute all disposable income.  This Court initially heard the Objections during each debtor's confirmation hearing, however, as the issues arose due to recent changes to the Bankruptcy Code and would affect the Chapter 13 bar as a whole, the confirmation

1

hearings were continued to a special hearing at the request of all parties in order to address issues

of common interest.  Counsel and interested members of the bar were invited to brief and address

the effect of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")

amendments on calculating disposable income and plan payments.  After the special hearing was

conducted on October 11, 2006, this Court took the cases under advisement, and after considering

the briefs, arguments of counsel, and the relevant law, makes the following findings of fact and

conclusions of law.

**Jurisdiction**

This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2)(L) and 1334.  Venue is

appropriate under 28 U.S.C. § 1408(1).

**I.  Facts**

Joseph and Cheryl Chauvin ("Chauvins") have above the median income for debtors residing

in the state.  On their Form B22C, the Chauvins have taken deductions for voluntary contributions

to a qualified 401(k) retirement account and a deduction based on amounts allowed under the

Internal Revenue Service guidelines[1] ("IRS standard deduction") for ownership expenses of a

vehicle.  The Chauvins vehicle is unencumbered.  Additionally, the Chauvins claim an IRS standard

ownership deduction on another vehicle encumbered by a  debt that will  be satisfied twenty-three

months after confirmation.  The Chauvins have also reduced their current monthly income based on

the Internal Revenue Service ("IRS") standard deduction for food, clothing and other miscellaneous

---

[1]  The debtors have calculated certain deductions from current monthly income on their Form B22Cs by
utilizing the IRS National and Local standard deductions.  Support for this position is claimed by reference to
§707(b)(2)(ii).  For ease of reference, the applicable monthly expense amounts specified under the National
Standards and Local Standards issued by the IRS for the area in which the debtor resides for five specified categories
of living expenses will be referred to as "IRS standard deductions."

items.  The IRS standard deduction is greater than the amounts the Chauvins have claimed on schedule J for the same expenses.  The Chapter 13 Trustee ("Trustee") has objected to all of the above deductions as unnecessary and unreasonable.

Keith Devilliers and Angela Dominguez ("Devilliers")  have above the median income for debtors residing in the state. Initially, the Devilliers listed secured debt as a deduction from current monthly income on their Form B22C.  In their proposed plan, the Devilliers committed all disposable income as calculated on Form B22C to the payment of claimants, including secured creditors.  Trustee objected to the plan alleging that this allowed the Devilliers to "double dip" by deducting secured debt payments from current income and then making those payments from the residual disposable income obtained after deduction.  At the hearing on this matter, the Devilliers voluntarily amended their plan to increase the proposed plan payment by the amount of secured debt installments.  The Devilliers also claimed as an additional deduction, medical expenses.  While they have supplied Trustee with support of historical medical expenses, Trustee maintains that documentary support must be supplied to prove necessity in the future.

John and Patricia Fretwell ("Fretwells") also have above the median income for debtors residing in the state.  The Fretwells have taken two IRS standard deductions for the ownership of two unencumbered vehicles.  They have also excluded social security income from Form B22C. The Fretwells' Form B22C claims medical expenses in the amount of $200 per month and reduces current monthly income for payroll taxes incurred on both social security and other income.  The Fretwells have also reduced their current monthly income based on the IRS standard deduction for food, clothing and other miscellaneous items.  The IRS standard deduction is greater than that reflected on schedule J for the same items. Trustee has objected to these deductions or exclusions

as unnecessary and unreasonable.

Joy Piazza ("Piazza") has above the median income for debtors residing in this state.  On her Form B22C  Piazza has also taken an IRS standard deduction for ownership on an unencumbered vehicle. Additionally, Piazza  has claimed an IRS standard deduction for food, clothing and other miscellaneous items.  The IRS standard deduction is greater than that reflected on schedule J for the same items.  Prior to her bankruptcy filing, Piazza had not contributed to a qualified retirement account.  As a result, her Form B22C does not include a deduction for contributions to a qualified retirement account.  However,  Piazza's schedule I reflects a deduction for retirement contributions and her plan payment incorporates the same reduction.  Trustee has objected to these deductions as unnecessary and unreasonable.

Antionette Guidry ("Guidry") has below the median income for debtors residing in this state. On schedule I Guidry included, as a deduction from income, voluntary contributions to a qualified 401(k) retirement account.  Trustee has objected to this deduction as unnecessary and unreasonable.

## II.  Projected Disposable Income

Trustee's Objections require the Court to interpret §1325(b)(1)'s directive that debtors commit all projected disposable income to pay claims under plans proposed for confirmation.  An analysis of the issues always begins with the applicable statute.  11 U.S.C. §1325 states:

Except as provided in subsection (b), the court shall confirm a plan [unless]—

> (b)(1) ... the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> \*\*\*
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under

the plan.

***

(2) for purposes of this subsection, the term "disposable income" means current monthly income received by the debtor ... less amounts reasonably necessary to be expended–

(A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed;

***

(3) Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b) (2), if the debtor has current monthly income, when multiplied by 12, greater than—

(A) [ the state median income for a family of like size]

Thus the Court's first task is to ascertain if, in accordance with §1325(b)(1)(B), debtors have proposed to pay their "projected disposable income."   This requires the Court to determine what "projected disposable income" means. "Projected disposable income" is not defined under the Code, however, §1325(b)(2) does instruct that "disposable income" means current monthly income[2] less reasonably necessary expenditures calculated in accordance with §707(b)(2).

Section 707(b)(2)(ii) explains that a debtor's monthly expenses shall be the applicable monthly expense amounts specified under the National Standards and Local Standards issued by the IRS for the area in which the debtor resides for five specified categories of expenses and debtor's actual monthly expenses for "Other Necessary Expenses" as allowed by IRS guidelines.   A few

---

[2]  11 U.S.C. §101(10A).   The term "current monthly income"---
(A) means the average monthly income from all sources that the debtor receives.......derived during the 6-month period [preceding the petition date]
(B) includes any amount paid by any entity other than the debtor ...on a regular basis for the household expenses of the debtor or debtor's dependents...but excludes benefits received under the Social Security Act, ...

Congressionally sanctioned deductions are also authorized.[3]   Under Congressional directive, reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor are deducted.   The IRS considers deductions for items such as child care expenses, involuntary deductions as a requirement of a job, and accounting or legal fees.

Section 707(b)(2) was substantially modified by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA").   The amendments incorporated a mechanical test designed to determine if a chapter 7 debtor could presumably repay unsecured claimants through a chapter 13 plan (commonly referred to as the "means test").[4]   The means test is historical in nature, utilizing both debtor's income and expenditures over the six months preceding filing as a gauge of his ability to pay unsecured claimants post petition.   If a chapter 7 debtor "fails" the means test, the burden shifts, and the debtor must overcome the presumption of abuse, dismiss his case, or agree to a conversion to chapter 13.   Therefore, while the test itself is mechanical, its application is not.   The

---

[3]   The five categories of living expenses for which National or Local Standards are calculated by the IRS are: food, clothing, household supplies, personal care, and miscellaneous expenses; utilities: housing charges; vehicle operation or public transportation expenses; and  transportation ownership or lease expenses.   "Other Necessary Expenses" considered by the IRS include life insurance, health care, educational expenses, dependent care, child care, court ordered support payments, job related involuntary deductions, accounting and legal fees, charitable contributions, secured debt payments, unsecured debt payments, taxes, telephone services, student loans, internet service expenses, and amounts necessary to repay federal tax loans.   These expenses may or may not be allowed in the discretion of the IRS.   Congress has also provided that a debtor's monthly expenses may include reasonably necessary expenses incurred to maintain the safety of the debtor and his family from family violence as defined by section 309 of the Family Violence Prevention and Services Act, or other applicable Federal law. The debtor's monthly expenses also include the actual administrative expenses of administering a chapter 13 plan for the district in which the debtor resides, up to an amount of 10 percent of the projected plan payments as determined under schedules issued by the Executive Office of the United States Trustees.   They may also include, if applicable, the actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family who is unable to support themselves; or the actual expenses for each dependent child less than 18 years of age, not to exceed $1,500 per year per child, to attend a private or public elementary or secondary school.

[4]   Only debtors receiving income over the six months preceding bankruptcy in excess of their state's median are required to comply with the means test.

6

calculations derived from the means test are only presumptive, not definitive, and may be modified by the existence of "special circumstance."[5]

By incorporating §707(b)(2)'s means test into §1325 for above the median income debtors, the deductions allowed by its provisions from current monthly income drive the level of disposable income a debtor must commit to confirm a chapter 13 plan. However, to what extent §707(b)(2) controls this calculation is the issue before the Court.

### A.  Projected Versus Historical Disposable Income

As an initial matter, every above the median income debtor must file a Form B22C, along with schedules I and J, with the petition for relief.[6]  Form B22C arguably calculates a debtor's disposable income after giving effect to the provisions of §§101(10A), 541(b)(7), 707(b)(2), 1322(f), and 1325(b)(2) and (3).  The form is a compilation, in most cases, of the actual monthly income received and expenses incurred by the debtor for the six months preceding filing.  Notably, certain expense categories are not included based on history, but national or local standards set by the IRS.[7] The resultant calculation is an above the median income debtor's "disposable income."

Similarly, schedules I and J are based on a debtor's historical income and expenditures. However, because schedules I and J do not utilize IRS standard deductions, but the actual amounts incurred by debtors at the time of filing, they are arguably a more accurate depiction of the level of

---

[5]  Section 707(b)(2)(B)(i).

[6]  Bankruptcy Rule 1007(b)(1)(6).

[7] National or local standards, published by the IRS are utilized for food, clothing, household supplies, personal care, and miscellaneous expenses; utilities; housing charges including rent, mortgage payments, property taxes, maintenance charges, interest, parking, homeowner's or renter's insurance, and homeowner dues and condominium fees; vehicle operation or public transportation expenses, including, maintenance, fuel, state and local registration, required inspection fees, parking fees, tolls, and driver's license charges; and  transportation ownership or lease expenses including payments on debts secured by a vehicle and insurance.

expenditure "reasonably necessary" to support debtor and his dependents.

Additionally, while Form B22C requires debtors to report the average of income received and expenditures paid over a six month period preceding bankruptcy, schedules I and J focus on debtor's current income and expenditures and are therefore less susceptible to historical anomalies. If fluctuations in income have preceded the filing, the income calculated by Form B22C will necessarily be a figure that is not reflective of the debtor's actual income at confirmation. Similarly, pre-petition increases or decreases in the level of expenditure will also affect the average expenditure levels deducted and the resultant disposable income provided by Form B22C. In either case, the calculation of disposable income on Form B22C will not be reflective of what, under previous law, the debtor might be expected to pay based on current circumstance.

To what extent a court should acknowledge this reality is a major source of disagreement. A handful of courts have taken the position that in calculating projected disposable income for confirmation, the figure derived by Form B22C, without adjustment for change or deviation brought by post petition events or pre-petition fluctuations in income or expense, is utilized. Reasoning that BAPCPA installed a mechanical test devoid of discretion or even common sense, these courts refuse to modify the calculations derived from Form B22C regardless of result. *See, e.g.*, *In re Barr*, 341 B.R 181 (Bankr. M.D.N.C. 2006); *In re Alexander*, 344 B.R.742 (Bankr. E.D.N.C. 2006); *In re Guzman*, 345 B.R. 640 (Bankr. E.D.Wis. 2006).

Other jurists have reasoned that the calculation of "projected disposable income" differs from that of "disposable income" in that the term "projected" implies a forward, future thinking approach that necessitates consideration of not only the debtor's past history but current circumstance and any anticipated future changes. *In re Edmunds*, 350 B.R. 636 (Bankr. D.S.C.2006). *See also, In re*

8

*Hardacre,* 338 B.R. 718 (Bankr. N.D.Tx.2006); *In re Jass,* 340 B.R. 411 (Bankr. D.Utah 2006); *In re Renicker,* 342 B.R. 304 (Bankr. W.D.Mo. 2006); *In re Kibbe,* 342 B.R. 411 (Bankr.D.N.H. 2006); *In re Grady,* 343 B.R. 747 (Bankr. N.D.Ga.2006); *In re Demonica*, 345 B.R. 895 (Bankr. N.D.Ill. 2006); *In re Johnson*, 346 B.R. 256 (Bankr. S.D.Ga.2006); *In re Love*, 350 B.R. 611 (Bankr. M.D.Ala. 2006); *In re McPherson*, 350 B.R. 38 (Bankr. W.D.Va. 2006).

Section 1325(b)(2) clearly defines "disposable income" based on historical information.  A finding that §1325(b)(1)'s "projected disposable income" is synonymous with §1325(b)(2)'s "disposable income" may support a ruling that the calculation of projected disposable income is mechanical and without reference to fluctuations in pre-petition expenditures and income, or post petition developments.  Two rules of statutory interpretation conflict with this result, however.

The first of these rules requires the Court to give meaning and import to every word in a statute.  *Negonsott v. Samuels*, 507 U.S. 99, 106, 113 S. Ct. 1119, 122 L. Ed. 2d 457 (1993), *see also, In re Jass*, 340 B.R. at 415.  Applying this principle, meaning should be given to the term "projected" in §1325(b)(1)(B).  The term "projected" is not defined in the Bankruptcy Code requiring the Court to look to its ordinary meaning.  *See e.g., Rousey v. Jacoway*, 544 U.S. 320, 330, 125 S. Ct. 1562, 161 L. Ed. 2d 563 (2005).  "Projected" means "[t]o calculate, estimate, or predict (something in the future), based on present data or trends." *In re Jass*, 340 B.R. at 415 *quoting, The American Heritage College Dictionary* 1115 (4th ed. 2002).  Under the ordinary meaning of the word, therefore, "projected" looks to the future.

The second rule of statutory interpretation is that the Court must presume that Congress acts intentionally and purposefully when it includes particular language in one section of a statute but omits it in another.  *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537, 114 S. Ct. 1757, 128 L. Ed.

2d 556 (1994).  Applying this rule, this Court finds that Congress intended to modify "disposable income" with the word "projected" in §1325(b)(1)(B) and intentionally omitted "projected" when defining "disposable income" in §1325(b)(2).  Therefore, since "projected" modifies "disposable income" in §1325(b)(1)(B), the Court is required to consider not only a debtor's historical income and expenses, but also his or her anticipated income and expenses when confirming a plan.[8]  *See, e.g., In re Hardacre*, 338 B.R. 722-723; *In re Fuller*, 346 B.R. at 482-483;  *In re Edmunds* 350 B.R. at 646-647; *In re Kibbe*, 342 B.R. 411 (Bankr. D.N.H. 2006)  *In re Demonica* 345 B.R. at 901-902, *In re LaSota*, 351 B.R. 56, 58 (Bankr. W.D.N.Y. 2006)  *see also, In re Grady*, 343 B.R. 747 (Bankr. N.D.Ga. 2006).

The Bankruptcy Code embodies a flexible scheme for the reorganization of debt and the orchestration of a debtor's fresh start.[9]  Within its guidelines, debtors are required to make payments to claimants in exchange for which assets are retained and debts are discharged.  No statute can anticipate every factual circumstance, and this Court does not believe that Congress intended to attempt such a feat. Instead it set forth a framework within which bankruptcy courts could operate, using a combination of historical and statistical data to derive the level of payment required to confirm a plan.  To hold otherwise would create an unworkable system for both claimant and debtor alike.

---

[8]   Additionally, the phrases "to be received in the applicable commitment period," in 1325(b)(1)(b), and "to be expended,"in 1325(b)(2), signify future income and expenses.  This adds support to the conclusion that Congress intended "projected disposable income" to be determined by looking at not only a debtor's pre-petition financial situation, but by also looking at his or her current and anticipated income and expenses.  *In re Edmunds*, 350 B.R. at 644.

[9]*See, e.g., Matter of Case*, 937 F.2d 1014, 1024 (5th Cir. 1991).

10

The Court is required to interpret the statutes enacted in a way that will not lead to absurd results. *Lamie v U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed. 2d 1024 (2004). To interpret these amendments mechanically leads to absurd results. For example, a mechanical construction of the means test would not allow the Court to eliminate, as a deduction from current monthly income, pre-petition payments made on a vehicle disposed of within the six months preceding filing or surrendered post petition. Similarly, precipitous drops in income or the receipt of nonrecurring income in the days preceding filing would result in a requirement that the debtor make monthly payments otherwise unreasonable given present income levels. Conversely, permanent increases in income pre or post petition might result in lower payments under the plan. Whatever Congress' intention, it falls to the courts to make the amendments it created function within the larger scheme of the Code. By viewing the historical calculations of disposable income through the prism of current circumstance, the Court may both "project" debtor's future disposable income and give effect to the entirety of the Code's provisions.

### 1) Applicable Expenditures

#### a. Are all Historically Generated Expenditures Deductible Post Petition?

Section 1325 provides that the calculation of disposable income only includes deductions to the extent reasonably necessary for the maintenance and support of the debtor and the dependents of the debtor. Section 1325 also instructs that "reasonably necessary" expenses are those calculated in accordance with §707(b)(2).[10]

Applying both the IRS framework of deductions and those created by Congress begins with the modifier found in §707(b)(2)(ii)(I). Only *applicable* monthly expense amounts are deducted.

---

[10] Additional deductions are found by reference to §§ 362(b)(19), 541(b)(7), 1322(f) and 1325(b)(2).

Thus, only the types of expense allowed by the IRS and applicable to the specific debtor in question are deducted.  This is in accord with §1325's general admonition that only those expenditures reasonably necessary for the support of the debtor or his dependents are deductible.  By modifying all deductions by the general requirements of applicability, reasonableness, and necessity, Congress avoided a rigid application of the IRS guidelines.  Thus, expenses historically generated, but unnecessary in the future, would not be included in the calculation of projected disposable income.

While some courts have held that every expenditure allowed by the IRS guidelines is available and appropriate for every debtor regardless of need, this Court does not read the applicable Code provisions so rigidly.  The limitations of §1325 requiring that any expenditure be reasonably necessary, as well as the requirement that the expenditure be applicable to the debtor, guard against the inclusion of an unnecessary expense in the calculation of disposable income simply because that expense might be both necessary and available for some other debtor.  Applying this reasoning, this Court would reach a different conclusion than that found in *In re Alexander*, 344 B.R. 181 (Bankr.E.D.N.C.2006) and *In re Farrar-Johnson*, 2006 WL 2662709,(Bankr.N.D.Ill.2006).

### b. Does Section 1325 Bar a Debtor who did not have an Expense Pre-Petition From Claiming the Expense in the Calculation Projected Disposable Income?

In enacting BAPCPA, Congress made certain policy choices regarding the determination of disposable income and allowed expenditures.  For example, prior to BAPCPA, few courts would have considered repayments on loans taken from retirement accounts a "reasonable or necessary" expense.  Yet under the amendments to §1325(b)(2)(A)(ii), repayments on loans from retirement accounts are now allowed as a deduction from disposable income on Form B22C.[11]  In so providing,

---

[11]   11 U.S.C. §1322(f).

Congress evidenced a clear preference for supporting a debtor's repayment to his retirement plan for amounts borrowed, even if it comes at the expense of his other creditors.

There appear to be other policy choices in the enactment of BAPCPA.  Congress evidenced a preference for expenditures not allowed under IRS guidelines.  Amounts expended for health and disability insurance, as well as funds deposited into a health savings account, are deductible.[12] Educational expenses incurred for private or public primary or secondary school[13] and expenses for the care and support of an elderly, chronically ill or disabled member of debtor's immediate family[14] are also deductible.  All of these provisions, added to the  Bankruptcy Code as permissible allowed deductions from current monthly income, indicate a policy shift.  Expenses historically considered luxuries, as well as those for which the debtor is not legally obligated, can now be considered reasonable and necessary.

A debtor that did not incur these expenses pre-petition does not claim them as deductions on Form B22C.  As a historical record, Form B22C only reflects expenses incurred pre-petition.  If rigidly applied, reference to Form B22C limits a debtor's ability to deduct, post petition,  expenses of a type typically allowed unless they were also incurred pre-petition.  This is inconsistent with a finding that the expense is both reasonable and necessary if incurred pre-petition.   Is the expense really unreasonable or unnecessary simply because it was first incurred post petition?

For example, a debtor without medical insurance pre-petition would not reflect a deduction for health insurance premiums on Form B22C.  By defining disposable income in rigid and historical

---

[12]   11 U.S.C. §707(b)(2)(A)(ii)(I).

[13]   11 U.S.C. §707(b)(2)(A)(ii)(IV).

[14]   11 U.S.C. §707(b)(2)(A)(ii)(II).

13

terms, no adjustment to projected disposable income could be made for a debtor that wished to acquire, post petition, medical insurance coverage.  Nor could a debtor adjust Form B22C's calculation of disposable income to reflect post petition realities, such as the necessity to support a parent recently disabled.

Historical levels of expense do not always reflect the amounts reasonably or necessarily designed to support the debtor and his dependants.  Not only does a change in circumstance create the potential for a change in expenditures, but many debtors forego health insurance, repaying a retirement fund loan, and other "optional" expenditures prior to filing bankruptcy in an attempt to satisfy debt payments.  If expenses are increasing, or income is decreasing, cuts in living expenses are the only viable means to close the gap.  Debtors may scrimp on food or clothing, defer car or household maintenance, elect to forego medical treatment, and neglect to acquire or maintain health or life insurance.  A debtor who deferred paying for any of these items would not include them as deductions on Form B22C.  Under Trustee's analysis, the debtor would also be subsequently barred from claiming the expenditure in any future determination of disposable income.  Yet debtor's pre-petition experience may have confined him to an unreasonable living condition, and it is that very condition from which the debtor may seek relief from the court.

For these reasons, debtor's historical payments cannot be the sole basis for calculating future disposable income.  Rather, the type of expenses allowed as deductions on Form B22C may be considered in the calculation of projected disposable income.  It is not necessary that the debtor have actually incurred the expense pre-petition in order for it to be considered reasonable and necessary

14

post petition.[15]

By the same token, a debtor's history will play a part in both the determination of reasonableness and necessity.  A debtor that survived without a particular expenditure pre-petition will bear the burden of establishing the reasonableness and necessity of the expense post petition. By way of example, if the debtor did not incur expenses for education; care of the chronically ill, elderly, or disabled; charitable expenses; insurance premiums or contributions to health savings accounts pre-petition; debtor will bear the burden of establishing their necessity and reasonableness post petition.

Once a determination has been made as to the type of expenses allowed and applicable to the debtor, the expense is deducted from current monthly income based either on the actual amounts incurred or IRS standard deductions.  As for the categories of expense deductible by reference to the IRS standard deductions, Trustee argues that the IRS standard deductions are only presumptively reasonable.  As such, if Trustee can overcome the presumption of reasonableness and necessity, the amounts allowed can be reduced.

### B.  Actual Versus Estimated Expenditures

Trustee urges the Court to modify the calculations based on actual expenditures versus those provided by the IRS standard deductions. Trustee argues that the IRS standard deductions are more often than not greater than the actual expenditures of local debtors.  As a result, Trustee urges the Court to further reduce  the calculation of "projected disposable income" to account for the actual

---

[15]  All expenditures, except those utilizing the IRS standards, are subject to independent verification. Again, while historical levels of expenditure might prove instructive, the past is not always prologue for the future. Thus, whether or not a particular type of expense was incurred pre-petition, to include it in the calculation of projected disposable income, the debtor may be required to provide independent verification of the necessity for the expense in the future.

levels of expenditure for the categories estimated on Form B22C.  In short, Trustee argues that schedules I and J should control over the IRS standard deductions, at least where schedules I and J reflect amounts lower than those provided by the IRS.

### 1) IRS Standard Deductions Versus Schedules I and J

Bankruptcy Rule 1007(b)(1) requires debtors to file schedules I and J, presumably an accurate reflection of their monthly income and expenses as of the petition date.  Trustee argues that since schedule J is an up to date reflection of the actual expenses incurred by debtors, it is a more appropriate guide of what is both reasonable and necessary for a debtor to support himself and his dependents than the IRS standard deductions.  In essence, Trustee maintains that as long as the type of expense is one generally allowed under §707(b)(2), the calculation of its appropriate level is best left to debtor's actual experience rather than national or local averages.

At confirmation, the Court must "project" debtor's future disposable income.[16]  As a projection, the calculation is far from certain and the Bankruptcy Code acknowledges that it may be wrong.[17]  Prior to BAPCPA, the determination of disposable income was tied to debtor's existing and actual expenses as set forth on schedule J.  The practice was to use these figures as the best guess of future expenditures.  But the expenses listed on schedule J are also only estimates of some expenses and minimal predictors of others.  For example, the amounts expended for utilities in any given month will vary and rarely equal the specific amount listed on schedule J.[18]  Similarly, a

---

[16]   11 U.S.C. §1325(b)(1)(B).

[17]   Section 1329 allows for modification of a plan should debtor's disposable income prove to be more or less than that originally calculated at confirmation.

[18]   For example, a debtor's utility bill for July in New Orleans will vary widely from his bill in January yet the amount reflected on schedule J is what the debtor deems to be his current monthly utility expense.  Some debtor's use an average, others the most recent month's bill.

debtor's historical level of expenditure for insurance may be a fair predictor of the minimum amounts a debtor can expect to pay, but rarely will equal that actually paid as insurance rates usually increase over time.  While Trustee maintains that schedule J is a more accurate predictor of debtor's future expenditures, the frequency of modification requests brought before this Court based upon unanticipated changes in financial position belies that conclusion.

Rather than use schedule J, Congress has substituted a different method for predicting debtor's anticipated level of expenditure.  Instead of schedule J, Congress has directed the utilization of IRS standard deductions.[19]  It remains to be seen if this yardstick proves more or less reliable, but there is at least one reason to utilize this method over the debtor's actual and immediate historical experience.  The IRS standard deductions provide a uniform and predictable standard for determining the appropriate level and deductibility of fluctuating and widely varying expenditures.

By utilizing the IRS standard deductions, Congress provided an objective starting point for the calculation of disposable income.  Rather than  utilize the debtor's experience, Congress standardized both the type and level of expense allowed for all debtors.  To this extent, some of the discretion formerly enjoyed by the bankruptcy courts and chapter 13 trustees may have been circumscribed, but as explained below, that discretion is not completely or permanently lost.

IRS standard deductions provide a ceiling for the applicable expenditures.  At least initially, they also supply a floor, providing predictability. The proper level of expenditure is no longer determined by applying a subjective standard of "reasonableness."  The trade off statutorily is that the level of deduction for common living expense categories leaves little room for individual

---

[19]   11 U.S.C. §1325(b)(3).

17

circumstance.[20]   Nevertheless,   the results obtained through this objective process can not be described as absurd.

Since the projection of disposable income is at best an educated guess, the utilization of IRS standard deductions is just as good an indicator of future expense levels as any.  Trustee is free to challenge the calculation of disposable income in the future if he believes the debtor's actual experience, over a sustained and reasonable period of time,  does not necessitate the full allowance claimed.  However, the starting point for all debtors will be the IRS standard deductions regardless of their pre-petition experience.

### 2)  Application of IRS Standard Deductions

#### a. Food, Clothing and Services, Personal Care Products and Services, and Miscellaneous Expenses

In calculating what expenses are reasonable and necessary for the support of a debtor and his family, Congress has instructed that the IRS standard deduction for food, clothing and services, household supplies, personal care products and services, and miscellaneous expenditures be utilized.[21]  By so doing, Congress has established a threshold amount presumably reasonable under the statute.

Trustee argues that a debtor's actual expenses are often substantially less than those allowed under the IRS standard deductions.  As set forth above, the IRS standard deductions are the initial

---

[20]   In two of the five categories, the standard allowance may be modified at confirmation if debtor substantiates that his experience warrants an upward departure.  The debtor's monthly expenses may include an allowance for housing and utilities, in excess of the allowance specified by the local standards for housing and utilities issued by the IRS, based on actual expenses for home energy costs if such expenses are reasonable and necessary.  It may also include, if demonstrably reasonable and necessary, an additional allowance for food and clothing of up to 5 percent of the food and clothing allowance as specified by the national standards issued by the IRS.  *See* §707(b)(2)(ii)(I) and (V).

[21]   11 U.S.C. §707(b)(2)(A)(ii)(I).

basis for calculating disposable income.  If Trustee determines that, for a sustained period of time, a debtor's actual post confirmation expenditures differ substantially from the IRS standard deductions, then Trustee may elect to challenge the calculation of disposable income under §1329 as inclusive of unnecessary or unreasonable expenses.

### b.  Deductions for Transportation, Ownership or Lease of a Vehicle

IRS standard deductions establish allowances for the costs associated with the acquisition or lease of a vehicle.[22]  Additionally, a separate deduction is provided for the costs associated with the operation and maintenance of the vehicle, or if no vehicle exists, costs associated with other means of transportation.  As with the standard allowance for food, clothing and services, household supplies, personal care products and services, and miscellaneous expenditures, the IRS guideline is the starting point to determine the necessary and reasonable level of future expenditure for these categories of expense.

Assuming debtor has a vehicle or needs to avail himself of public transportation,  operational expenses or those incurred for public transportation will be based on the IRS standard deduction.  Although the allowance may not match the historical experience of the debtor, as explained above, history may not be indicative of actual need.  A debtor may have deferred ordinary or extraordinary maintenance on his vehicle pre-petition in an effort to stave off bankruptcy.  A vehicle's age may

---

[22]  Under the IRS' standards, the lease or purchase payment, along with insurance charges, comprise the standard cost of acquiring or leasing a vehicle.  Maintenance, fuel, state and local registration, inspections, parking fees, tolls, and driver's license charges are included in the operational standard allowance.  Pursuant to §707(b)(2)(A)(iii)(II), the monthly secured note payable to maintain possession of debtor's motor vehicle is also deductible from current monthly income.  Since the note is encompassed within the acquisition standard, to the extent that the note is less than the standard (after adding the costs of insurance), any difference is presumably not deductible because it is either unreasonable or unnecessary.  Conversely, lease payments on vehicles are deductible to the extent of the standard ownership allowance and not in excess of the amounts provided as they are not payments secured by a vehicle under §707(b)(2)(A)(iii)(II).  Since both of these calculations are readily ascertainable at confirmation, the Court will consider these types of objection at confirmation.

19

make maintenance unpredictable, skewing the level of expense reflected on schedule J.  Whatever

the case, the IRS standard deduction supplies an objective allowance for this purpose.  As previously

noted, if Trustee determines that, for a sustained period of time, the debtor's actual post confirmation

expenditures differ substantially from the IRS standard deduction, then Trustee may elect to

challenge the calculation of disposable income under §1329 as inclusive of unnecessary or

unreasonable expenses.

As for the IRS standard deduction allowed for the costs associated acquiring ownership or

leasing a vehicle, this deduction is only applicable if a debtor is actually paying for or leasing a

vehicle.  Unencumbered vehicles do not qualify for the deduction.  Although this may discriminate

against a debtor who has an unencumbered vehicle, Congress has elected to make this distinction.

The deduction is not the equivalent of an allowance for depreciation or an invitation for a debtor to

"save" for the ultimate replacement of an existing vehicle.  Instead, the  deduction is designed to

assist with the acquisition of a vehicle on credit.[23]

### C.  Deductions for Contributions to Qualified Retirement Plans

Contributions to qualified retirement plans are excluded from disposable income under

§541(b)(7).  Section 541(b)(7) states:

> [A]ny amount withheld by an employer from the wages of employees, or received
> by an employer from employees, for payment as contributions to—
>
>> (I) an employee benefit plan that is subject to title I of the Employee
>> Retirement Income Security Act of 1974 or under an employee benefit plan
>> which is a governmental plan under section 414(d) of the Internal Revenue

---

[23]  Debtors' counsel have argued that wholly owned vehicles are more likely to require additional and
substantial repairs not otherwise covered by the operation allowance.  They maintain that the ownership deduction
would be a viable means for deducting these additional costs and therefore should be allowed.  The Court rejects this
argument. If a vehicle routinely incurs repair or maintenance expenses exceeding those allowed under IRS standards,
Congress seems to be favoring the purchase of a new car over the continued maintenance of the old.

Code of 1986;

(II) a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or

(III) a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986.

Except that such amount under this subparagraph shall not constitute disposable income, as defined in section 1325(b)(2).

Thus, mandatory or voluntary contributions to qualified retirement plans are not property of the estate, nor are they considered when calculating disposable income.[24]  Trustee concedes that voluntary contributions to a qualified retirement account are not included in the calculation of disposable income.  However, Trustee maintains that the Court may set the level of contributions allowed under a reasonable and necessary standard.

Section 541(b)(7) instructs that contributions to a qualified plan do not constitute disposable income for purposes of §1325(b)(2).  As excluded income, the contributions are not a deduction because they were never included in the first instance.

Further, unlike the provisions of §707(b)(2) and §1325(b)(2) or (3), §541(b)(7) does not modify excluded contributions based on reasonableness or necessity.  Throughout the other applicable sections of the Code, every deduction offered is modified by a requirement that the expense be  "necessary and reasonable."  Yet, §541(b)(7) omits any reference to this important limitation on the exclusion.  Instead, §541(b)(7) simply declares that the contributions are "not

---

[24]  In four of the five cases considered, deductions for contributions to a qualified retirement account have been challenged by the Trustee.  Three of the cases involve above the means test debtors and one concerns a below the means test debtor.  Because the exclusion for qualified retirement contributions is not limited to above the means test debtors, but found as a general proposition under §541, the Court can find no distinction in the availability of the deduction between above or below the means test debtors.

disposable income as defined in section 1325(b)(2)."  Although §1325(b)(2) contemplates, as a general premise, that reasonably necessary expenses for the support and care of the debtor and his dependents are the only deductions allowed, the more specific provisions of §541(b)(7) control over the general.  *See*, *Gaddis v. U.S.*, 381 F.3d 444, 469 (5th Cir. 2004).

The Code simply contains no requirement that contributions to a retirement account be "reasonable or necessary."  Perhaps more accurately, Congress has determined that contributions to a qualified retirement account are, by their very nature, reasonable and necessary.  By providing for a debtor's eventual retirement, retirement contributions become part of debtor's fresh start.

### D.  Waiver of Necessary or Reasonable Expenditures

As previously acknowledged, many debtors will forego necessary and reasonable expenditures, pre-petition, in order to make ends meet.  Post petition, debtors may waive their right to deduct certain expenditures entirely or at the levels allowed, in favor of increasing the amounts payable to claimants.  While Congress has indicated  that certain types of expense are reasonable and necessary, nothing in the BAPCPA amendments requires a debtor to take advantage of what Congress has offered.  A debtor is free to reduce or forego any allowed deduction in order to confirm a plan.  Similarly, a debtor is always free to include exempt income as an additional contribution to make a plan feasible.  While the inclusion of exempt assets or income is less of a concern to the Court than the waiver of allowed expenses, unless the resulting budget is so troubling that it casts doubt on a plan's feasibility, the Court will leave it to the discretion of the debtor as to which expenses he elects to waive and at what level.

22

### E.  Social Security Income

Section 101(10A) provides that current monthly income is determined without reference to amounts collected from social security.  Trustee argues that this places a significant stream of income beyond the reach of creditors.  This is true.  However, Congress, in plain and unambiguous language, specifically excluded social security benefits from current monthly income.  The result is that they are also excluded in calculating disposable income.[25]

Congress is presumed to know the effect of its acts.  *See, e.g. Cannon v University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed. 2d 560 (1979). For above the means test debtors, social security income may reach $24,636.00 for individuals and $49,272.00 for married couples. Unlike an unknown or unanticipated change in income, social security benefits are both predictable and certain. It appears that Congress, through BAPCPA, effected a policy decision that regardless of income level, a debtor's social security benefits would be protected from creditor interests.  The rationale for this treatment, lies in the exempt  nature of the benefits themselves.

Generally, an individual's social security benefits are exempt from garnishment or seizure.[26] Despite federal exemption, prior to BAPCPA's enactment, some bankruptcy courts held that social security income was to be included in the calculation of disposable income.  *See, e.g., In re Hagel*, 184 B.R. 793 (9th Cir. BAP 1995)  Now under the provisions of BAPCPA, Congress has provided

---

[25]   The calculation of disposable or projected disposable income begins with current monthly income. Section 101(10A) defines current monthly income.  *See fn2.*

[26]   42 U.S.C.A. § 407(a) provides that:

The right of any person to any future payment under this subchapter shall not be transferrable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

an unambiguous directive that social security benefits are not considered in calculating disposable income and are therefore unavailable to pay claims generally.

The exclusion of social security benefits from disposable income might appear counter intuitive at first. However, because creditors had no right to seize these benefits pre-petition, their exclusion from disposable income post petition is not a drastic change in a creditor's position. Decisions regarding credit advances could not, or perhaps should not, have been based on the existence of social security income. As a result, their exclusion leaves creditors in no worse a position than existed pre-petition, with two important exceptions.

While the language of 42 U.S.C.A. §407(a) exempting benefits from seizure is extremely broad, it does have two important exceptions. 28 U.S.C.A.§3402(p)(1) provides that federal payroll taxes incurred as a result of social security benefits are payable from those benefits. Additionally, 42 U.S.C.A. §405(j) allows the Social Security Administration to pay benefits directly to a representative payee if done for the benefit of the individual recipient. Typical examples of this exception allow the payment of benefits to a hospital caring for the individual. *See, e.g., Crytes v Schafer*, 743 F.Supp. 677 (E.D.Mo. 1990), *aff'd in part, King v Schafer*, 940 F.2d. 1182 (8th Cir. 1991). As a result, while the benefits attributable to social security are excluded from the calculation of disposable income, both the payroll taxes incurred as a result of their payment, as well as debtor's actual medical expenses are susceptible to objection by Trustee as an unnecessary or unreasonable deduction from current monthly income. Because social security income is both available and answerable to pay these expenses, debtor will bear the burden of establishing the reasonableness of any requested deduction from current monthly income for this purpose.

24

Therefore, this Court holds that social security benefits are excluded from the calculation of projected disposable income under §1325, but also notes that the exclusion may raise issues as to the deductibility of medical and payroll tax expenses.

### F.  Conclusion as to Issues Relating to Projected Disposable Income

The provisions of §1325(b)(1) dictate that the Court shall consider not only historical, pre-petition, levels of income and expense, but events and conditions occurring post petition that may effect income and expenses.  The starting point in this analysis is the debtor's historical income and expenses as reflected on Form B22C.   For five categories of expenses, actual or historical levels of expenditure are set aside in favor of IRS standard deductions.   These allowances are presumed reasonable and necessary to the extent applicable to a specific debtor.  They are, however, subject to challenge, following confirmation, if for a sustained period of time debtor's actual expenses are substantially below that claimed.   As for other expenses deducted on Form B22C, to the extent they are applicable to debtor's future circumstance, they will be allowed as deductions in the calculation of projected disposable income.[27]  Expenses not incurred pre-petition but alleged to be necessary and reasonable post petition, will also be considered in calculating a debtor's projected disposable income, but debtors will bear the burden of establishing both the reasonableness and necessity of the expense.

### III.  Good Faith

Trustee also objects to confirmation of these plans on the ground that they are not proposed in good faith as required by §1325(a)(3).  Debtors urge that because they have met the requirements

---

[27]  The Court presumes that these expenses has already been established as reasonable and necessary pre-petition charges if included on Form B22C.  The only issue the Court addresses is debtor's ability to claim the same expenditures and levels consistent with Form B22C in the calculation of projected disposable income.

of §1325(b) and §707(b)(2) and have proposed plans paying all their disposable income, they are in good faith.

Some courts have held that technical compliance with the provisions of §1325(b) precludes a finding of bad faith. *See, In re Alexander*, 344 B.R. 742 (Bankr.E.D.N.C. 2006)(calculation of debtor's disposable income must be determined under §1325 and is not an element of good faith); and *In re Farrar-Johnson*, 2006 WL 2662709 (Bankr.N.D. Ill. 2006)(good faith is still a factor in confirmation but the calculations on Form B22C create a safe harbor).

This Court finds that strict and technical compliance with the means test does not necessarily satisfy any debtors' burden of good faith. Determining whether a plan is proposed in good faith requires an analysis of the totality of the circumstances. *Deans v O'Donnell*, 692 F.2d 968 (4th Cir. 1982) and *In re McLaughlin*, 217 B.R. 772 (Bankr.N.D.Tex. 1998). Nothing in the legislative history of BAPCPA indicates that Congress intended to eliminate this inquiry for debtors proposing to pay the amounts set forth on Form B22C. If in fact technical compliance with the provisions of §1325(b)(2) was the only component of good faith, §1325(b)(7) would be superfluous. Instead, despite a plan's compliance with all other provisions of §1325, §1325(b)(7) provides the additional requirement that the plan must be proposed in good faith.

Having concluded that technical compliance with §1325 does not create a safe harbor for debtors, the Court concedes that it should be the rare debtor whose proposed plan is technically in compliance with §1325(b) but cannot meet the burden of good faith.

**IV. Ruling**

Under the analysis set forth above, confirmation is denied for the plans proposed by the Chauvins, Devilliers, Fretwells, and Piazza. Specifically, because the Chauvins, Fretwells and

Piazza claimed, in the calculation of projected disposable income, IRS standard ownership deductions for unencumbered vehicles, confirmation of their plans will be denied.   The failure of the Devilliers to supply the Court with proof as to the reasonableness and necessity of future health care expenses they propose to deduct from current monthly income constitutes an additional ground for denying confirmation of their  plan.   Piazza has also failed to establish the reasonableness and necessity of proposed deductions for contributions to a qualified retirement account. The Fretwells have failed to establish the necessity or reasonableness of claimed medical and payroll tax deductions in light of excluded social security income.   All Objections by the Trustee as to the necessity or reasonableness of the deductions claimed for food, clothing, and other miscellaneous items are denied.

With regard to Trustee's Objection to the deductions claimed by the Chauvins and Guidry for contributions to a qualified retirement account, to the extent the deductions are within the tax deferred limits of the Internal Revenue Code, they will be allowed and the Objection of the Trustee will be denied.

Separate Orders in accord with this Opinion will be entered.

New Orleans, Louisiana, January 9, 2007.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge